J-S46021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN EDWARD SALADA | : | |
| | : | |
| Appellant | : | No. 373 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0001050-2023

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.: **FILED: June 30, 2026**

Appellant Justin Edward Salada appeals from the judgment of sentence imposed following a jury verdict that convicted him of possession with intent to deliver (PWID) and related charges. On appeal, Appellant argues that his convictions were against the weight of the evidence and claims that the trial court erred in denying his motion to suppress. Following our review, we affirm.

By way of background, in 2023, police received a report that an unconscious male had been "slumped over" his steering wheel in a Sheetz parking lot for approximately thirty minutes. Upon arrival, Officer Hill observed Appellant sleeping in his vehicle. At that time, Appellant was in the vehicle with another individual, Tiffany Kurtz. Ultimately, police conducted a DUI investigation of Appellant and observed several controlled substances in

plain view. As a result, police conducted a search and Appellant was charged with multiple drug-related offenses.

The trial court summarized the underlying facts and procedural history of this matter as follows:

> On November 6, 2024, following a two (2) day jury trial, [Appellant] was found guilty of the following charges: (1) possession with intent to deliver (methamphetamine); (2) possession with intent to deliver (fentanyl); (3) possession of a controlled substance (methamphetamine); (4) possession of a controlled substance (fentanyl); (5) possession of drug paraphernalia (baggies); and (6) possession of drug paraphernalia (straws).[1] [Appellant] was sentenced on December 17, 2024, to twenty-seven (27) months to five (5) years on each count of possession with intent to deliver to be served consecutive to each other and to all other periods of incarceration currently being served at SCI-Huntingdon; on each count of possession of a controlled substance to a period of incarceration of six (6) months to one (1) year to be served concurrent to each other and concurrent with the first count of possession with intent to deliver; and on each possession of drug paraphernalia count to a period of incarceration of six (6) months to one (1) year to be served concurrent to each other and concurrent to the first count of possession with intent to deliver.
>
> [Appellant] filed post-sentence motions on December 27, 2024. Said post-sentence motions included a motion for acquittal/new trial, a motion for reconsideration, a motion to reconsider the motion to suppress, and a motion to file supplemental post-sentence motion. Argument on [Appellant]'s post-sentence motions was held on January 20, 2025, and the same were denied by order dated March 6, 2025.

Trial Ct. Op., 5/12/25, at 1-2.

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(30), 780-113(a)(16), 780-113(a)(16), 780-113(a)(32), and 780-113(a)(32), respectively.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises three issues, which we have reordered as follows:

1. Whether the [trial court] erred in denying [Appellant's motion] to suppress evidence, where police officer(s) consent, without a search warrant, and without any unlawful justification in violation of the rights secured by the Fourteenth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution.

2. Whether the trial court erred when, on November 6, 2024, it accepted the guilty verdict on the charge of possession with intent to deliver a controlled substance (Methamphetamine) which was against the weight of the evidence with regard to the element of the offense of intend to deliver a controlled substance and subsequently sentenced the Appellant to twenty-seven (27) months to five (5) years of incarceration.

3. Whether the trial court erred when, on November 6, 2024, it accepted the guilty verdict on the charge of possession of a controlled substance (Fentanyl) which was against the weight of the evidence with regard to the element of the offense to intend to deliver a controlled substance, and subsequently sentenced the Appellant to twenty-seven (27) months to five (5) years of incarceration to be served consecutive to the charge of possession with intent to deliver (Methamphetamine).

Appellant's Brief at 9.

In his first claim, Appellant argues that the trial court erred in denying his motion to suppress because his interaction with police was not supported by reasonable suspicion and that the seized evidence recovered by police constituted fruit of the poisonous tree as the police unlawfully searched the

- 3 -

vehicle. *Id.* at 24. Specifically, Appellant argues that police unlawfully entered Appellant's vehicle without legal justification to do so. *Id.* In support, Appellant claims that the Commonwealth failed to produce evidence that he was unresponsive at the time police arrived at the Sheetz gas station. *Id.* at 27. Therefore, Appellant concludes that the trial court should have granted his motion to suppress.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Fletcher*, 307 A.3d 742, 745-46 (Pa. Super. 2023) (citations and brackets omitted).

Further, while "[o]ur standard of review is restricted to establishing whether the record supports the suppression court's factual findings[,] . . . we maintain de novo review over the suppression court's legal conclusions." *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016)(citation omitted).

Additionally, this Court has explained:

> With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to

- 4 -

believe all, part or none of the evidence presented. At a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa. Super. 2021) (*en banc*) (citations omitted and some formatting altered). Further, it is well established that an appellate court may affirm a suppression court on any ground supported by the record. *See Commonwealth v. Hightower*, 340 A.3d 1015, 1022-23 (Pa. Super. 2025) (*en banc*).

As this Court has previously stated:

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty.

An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

*Commonwealth v. Miller*, 333 A.3d 470, 477 (Pa. Super. 2025) (citations omitted and some formatting altered).

Here, the trial court explained:

In the case at bar, the initial contact with [Appellant] was a mere encounter as officers were responding to a report of a male slumped over his steering wheel. The interaction did rise to the

level of an investigative detention when Officer Hill noticed indications of impairment and asked [Appellant] to step out of the vehicle and subsequently asked him to do field sobriety tests. This investigative detention was supported by reasonable suspicion, as [Appellant] pulled into Sheetz at 3:00 in the afternoon, parked at a gas pump for twenty (20) minutes, never exited the vehicle until police arrived, was slumped over the steering wheel, and only became alert when Officer Hill arrived and knocked on his window to check on him. Thus, the investigative detention of [Appellant] to do field sobriety tests was supported by reasonable suspicion and not an unlawful detention.

Moreover, [Appellant] was not arrested when he was doing his field sobriety tests and was also not arrested after completing those tests. Officer Hill determined that [Appellant] was not under the influence of an intoxicating substance and released him following completion of the field sobriety tests. Therefore, because [Appellant] was only subjected to an investigative detention that was supported by reasonable suspicion, [Appellant]'s averment that he was unlawfully detained and arrested was of no merit.

* * *

Similarly, the officer opened the door of the vehicle when the demeanor of the passenger in the van raised the concern of the officers. Testimony indicated that the officers were trying to signal to her to see if she was conscious and alert, as they were at the scene for a report of a man slumped over a steering wheel. The opening of the door served two (2) purposes, the first to ensure officer safety as the passenger appeared to be trying to hide herself or was otherwise incapacitated and the second, to ensure the safety and well-being of the passenger. Upon opening the door to do the same, the officers were able to observe drug paraphernalia in plain view within the vehicle. As [Appellant]'s constitutional rights against unreasonable searches and seizures was not violated, this court did not err in denying his motion to suppress.

Trial Ct. Op. at 11-12.

Following our review of the record, we find no error of law in the trial court's conclusions, which are supported by the record. *See Fletcher*, 307

A.3d at 745-46. As trial court noted, police arrived at Sheetz after a report that a male was unconscious in his vehicle. N.T. Trial, 11/5/24, at 23. Further, after arrival, Officer Hill observed Appellant slumped over the steering wheel, and he only became alert after the officer knocked on the car window to check on him. Accordingly, the investigative detention of Appellant by Officer Hill to conduct sobriety tests was amply supported by reasonable suspicion based on the totality of the circumstances. Moreover, as noted by the trial court, Appellant was not arrested upon the completion of those tests. *See id.* at 24. In sum, we affirm based on the trial court's analysis of this issue.

**Weight of the Evidence**

In his remaining claims, Appellant argues that his convictions for PWID were against the weight of the evidence. Appellant's Brief at 19-24. Specifically, Appellant argues that the evidence did not establish that he had the intent to deliver methamphetamine or fentanyl. *Id.* at 19-21. In support, Appellant claims that Tiffany Kurtz testified that the drugs and the paraphernalia were recovered from an area of the vehicle where Ms. Kurtz was located. *Id.* at 21, 23. Further, Appellant argues that Ms. Kurtz confirmed in her trial testimony that she was the owner of those items. *Id.* at 20. Therefore, Appellant concludes that he is entitled to a new trial.

In reviewing a challenge to the weight of the evidence, we are governed by the following standard of review:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)

(citations omitted).

As this Court has repeatedly stated,

[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations

omitted and formatting altered).

Here, the trial court explained:

The jury had the opportunity to hear Ms. Kurtz's testimony in which she stated that she "had [Appellant] pick [her] up from a friend's house, and I had him pick me up to buy drugs," and that he purportedly did not know what she was doing. Trial Transcript 1, p. 121. The jury determines the facts, which witnesses are credible, and what occurred. The jury was free to believe all, part or none of the testimony provided by the witnesses. The jury could have found the witnesses' testimony was lacking in credibility, however, they did not. The relevant facts remain the same. The jury made its determination, as is their purview. Thus, this court's sense of justice was not shocked by the guilty verdicts regarding the charges of possession of a controlled substance (methamphetamine) or possession with intent to deliver (methamphetamine) such that a new trial is warranted.

***Id.*** at 5.

Additionally, the trial court explained:

[Appellant] had constructive possession of fentanyl. Officer Doherty credibly testified that during his interview of [Appellant]; [Appellant] admitted that some of the drugs were his. Specifically, the drugs in bags with the "Guy Fox" mask on them. ***See*** Trial Transcript 1, p. 74; ***see also*** Commonwealth's Exhibit 3. Nineteen (19) stamp bags labelled "New World," with the mask were teste d by Erie Crime Lab and were positive for xylanzine, heroin, and fentanyl. Moreover, the stamp bags were found behind the air vent directly next to the steering wheel on the left-hand side. ***Id.*** at p. 74. [Appellant] told law enforcement that the purpose behind the vehicle in question was to enable [Appellant] to get to and from work. ***See*** Commonwealth's Exhibit 3. Moreover, [Appellant] admitted to the police that he always drove Tiffany Kurtz to buy and later sell drugs. ***Id.*** [Appellant] admitted that the fentanyl in question was his and the fentanyl was located in an area that he almost solely occupied, near the driver's seat. Therefore, the jury's verdict of guilt on the charge of possession of a controlled substance (fentanyl) does not shock

- 9 -

the court's sense of justice and [Appellant] is not entitled to a new trial.

Regarding the offense of Possession with Intent to Deliver (fentanyl), the jury's determination of guilt is not against the weight of the evidence. As stated above, [Appellant] admitted that he drove Tiffany Kurtz around so that she could buy and sell controlled substances. *See* Commonwealth's Exhibit 3. Officer Doherty testified that a large number of glassine packets or stamp bags were found in the vehicle. *See* Trial Transcript 1, p. 59. Officer Doherty explained that stamp bags are commonly used to store and package consumable drugs, usually heroin-like substances. *See id.* This caught Officer Doherty's attention as, in his experience, normal consumers only have a few stamp bags as opposed to the number found in the vehicle. *See id.* Additionally, a large number of small elastic bands were found in the vehicle. *See id.* at 60. Officer Doherty credibly testified that elastic bands are "commonly used to separate out packages of heroin-like substances by banding them together in what we refer to as bundles. That's the typical way that these things are sold, in bundles." *Id.* at. 61. Officer Doherty indicated further that the number of elastic bands was more typical of delivery, or the trafficking of drugs. *See id.* Two (2) digital scales were also found in the vehicle. As discussed above, Officer Doherty explained that digital scales are often used to weigh the substance for sale. *See id.* at 65. The combination of controlled substances, packaging materials, digital scales, and [Appellant's] own statements to police would lead a reasonable juror to determine that [Appellant] had the intent to deliver the controlled substance. Therefore, the guilty verdict regarding the offense of possession with intent to deliver was not against the weight of the evidence.

Trial Ct. Op. at 6-8.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Windslowe*, 158 A.3d at 712. The jury, as fact finder, was entitled to make credibility determinations and could believe all or part or none of the evidence presented. Instantly, we will not re-weigh evidence or substitute our judgment for that of the finder of fact on appeal because the

jury's decision was supported by the record and does not shock one's sense of justice. **See Spence**, 290 A.3d at 311; **Commonwealth v. Blackham**, 909 A.2d 315, 320 (Pa. Super. 2006). Therefore, Appellant is not entitled to relief on this claim. For these reasons, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/30/2026